## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

JODIE MARKOCH,

              Plaintiff,

   v.

COMMISSIONER OF SOCIAL
SECURITY,

              Defendant.

1:20-cv-00417-NLH

**OPINION**

---

**APPEARANCES:**

JENNIFER STONAGE
RICHARD LOWELL FRANKEL
BROSS & FRANKEL, PA
725 KENILWORTH AVE
CHERRY HILL, NJ 08002

    *On behalf of Plaintiff*

SHAWN CHEREE CARVER
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET - SIXTH FLOOR
PHILADELPHIA, PA 19123

    *On behalf of Defendant*


**<u>HILLMAN</u>, District Judge**

    This matter comes before the Court pursuant to Section

205(g) of the Social Security Act, as amended, 42 U.S.C. §

405(g), regarding Plaintiff's application for Supplemental

Security Income ("SSI")[1] under Title XVI of the Social Security Act. 42 U.S.C. § 401, et seq. The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled since June 16, 2015. For the reasons stated below, this Court will affirm that decision.

## I.   BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, Jodie Markoch, claims that she cannot work[2] and is entitled to SSI due to her impairments of affective disorder, PTSD, anxiety disorder, cognitive disorder, attention deficit disorder, lumbar degenerative disease/arthropathy, irritable bowel syndrome, right shoulder pain, carpal tunnel syndrome, cervical degenerative disc disease, hip pain, bunions and substance abuse disorder.[3]  On

---

[1] Supplemental Security Income is a program under the Social Security Act that provides supplemental security income to individuals who have attained age 65, or are blind or disabled. 42 U.S.C. § 1381 et seq.

[2] Plaintiff has never engaged in work defined as "substantial gainful activity" by the regulations, but she has reported working in the past at a grocery store deli counter, as a laborer at a printing business and at an electronics manufacturer, and at a fitness club. (R. at 236, 250, 345). She also reported having a cleaning business for eleven years (R. at 60, 368). Plaintiff last worked in 2010.

[3] The claimant was 41 years old at the time of her claim for SSI, which is defined as a younger individual (age 18-49). 20 C.F.R. § 416.963. "If you are a younger person (under age

November 7, 2015, Plaintiff protectively filed an application

for SSI,[4] alleging that she became disabled as of June 16,

2015.[5]

    After Plaintiff's claim was denied initially and upon

reconsideration, Plaintiff requested a hearing before an ALJ,

which was held on September 14, 2018.  On October 30, 2018,

the ALJ issued an unfavorable decision.  Plaintiff's Request

for Review of Hearing Decision was denied by the Appeals

Council on January 4, 2019, making the ALJ's decision final.

Plaintiff brings this civil action for review of the

Commissioner's decision.

---

50), we generally do not consider that your age will seriously
affect your ability to adjust to other work." Id.

[4] A protective filing date marks the time when a disability
applicant made a written statement of his or her intent to
file for benefits.  That date may be earlier than the date of
the formal application and may provide additional benefits to
the claimant.  See SSA Handbook 1507; SSR 72-8.

[5] Even though Plaintiff contends that her onset date of
disability is June 16, 2015, the relevant period for
Plaintiff's SSI claim begins with her November 7, 2015
application date, through the date of the ALJ's decision on
October 30, 2018.  See 20 C.F.R. § 416.202 (claimant is not
eligible for SSI until, among other factors, the date on which
she files an application for SSI benefits); 20 C.F.R. §
416.501 (claimant may not be paid for SSI for any time period
that predates the first month she satisfies the eligibility
requirements, which cannot predate the date on which an
application was filed).

## II.  DISCUSSION

### A.    Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits.  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Substantial evidence means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.  The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir.

4

1984).  "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections."  Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000).  Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him.  Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all
> evidence and has sufficiently explained
> the weight he has given to obviously
> probative exhibits, to say that his
> decision is supported by substantial

5

> evidence approaches an abdication of the
> court's duty to scrutinize the record as a
> whole to determine whether the conclusions
> reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).

Although an ALJ, as the fact finder, must consider and
evaluate the medical evidence presented, Fargnoli, 247 F.3d at
42, "[t]here is no requirement that the ALJ discuss in its
opinion every tidbit of evidence included in the record," Hur
v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004).  In terms of
judicial review, a district court is not "empowered to weigh
the evidence or substitute its conclusions for those of the
fact-finder."  Williams, 970 F.2d at 1182.  However, apart
from the substantial evidence inquiry, a reviewing court is
entitled to satisfy itself that the Commissioner arrived at
his decision by application of the proper legal standards.
Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445,
447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793
(D.N.J. 1981).

   **B.   Standard for SSI**

   The Social Security Act defines "disability" for purposes
of an entitlement to a period of disability and disability
insurance benefits as the inability to engage in any
substantial gainful activity by reason of any medically

6

determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  See 42 U.S.C. § 1382c(a)(3)(A).

Under this definition, a Plaintiff qualifies as disabled only if his physical or mental impairments are of such severity that he is not only unable to perform his past relevant work, but cannot, given his age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  42 U.S.C. § 1382c(a)(3)(B) (emphasis added).

The Commissioner has promulgated regulations[6] for determining disability that require application of a five-step sequential analysis.  See 20 C.F.R. § 416.920.  This five-step process is summarized as follows:

1.   If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2.   If the claimant does not suffer from a "severe

---

[6] The regulations were amended for various provisions effective March 27, 2017.  See 82 F.R. 5844.  The parties do not indicate that any of the amendments are applicable to the issues presented by Plaintiff's appeal.

7

impairment," he will be found "not disabled."

3.   If the severe impairment meets or equals a listed
     impairment in 20 C.F.R. Part 404, Subpart P,
     Appendix 1 <u>and</u> has lasted or is expected to last for
     a continuous period of at least twelve months, the
     claimant will be found "disabled."

4.   If the claimant can still perform work he has done
     in the past ("past relevant work") despite the
     severe impairment, he will be found "not disabled."

5.   Finally, the Commissioner will consider the
     claimant's ability to perform work ("residual
     functional capacity"), age, education, and past work
     experience to determine whether or not he is capable
     of performing other work which exists in the
     national economy.  If he is incapable, he will be
     found "disabled."  If he is capable, he will be
     found "not disabled."

20 C.F.R. § 416.20(b)-(f).

Entitlement to benefits is therefore dependent upon a
finding that the claimant is incapable of performing work in
the national economy.

This five-step process involves a shifting burden of
proof.  <u>See</u> <u>Wallace v. Secretary of Health & Human Servs.</u>, 722
F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps of
the analysis, the burden is on the claimant to prove every
element of his claim by a preponderance of the evidence.  <u>See</u>
<u>id.</u>  In the final step, the Commissioner bears the burden of
proving that work is available for the Plaintiff: "Once a
claimant has proved that he is unable to perform his former

job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

   **C.   Analysis**

   At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability through the end of the relevant time period.  At step two, the ALJ found that Plaintiff's affective disorder, anxiety disorder, cognitive disorder, attention deficit disorder (ADHD) and lumbar degenerative disc disease/ arthropathy were severe.  At step three, the ALJ determined that Plaintiff's severe impairments or her severe impairments in combination with her other impairments did not equal the severity of one of the listed impairments.  Plaintiff did not have any past relevant work,[7] but the ALJ determined that

---

[7] As noted above, *supra* note 2, Plaintiff did not perform work that qualified as "past relevant work" under SSA regulations, but she still performed various jobs, including having her own cleaning business, until 2010.  See SSR 82-62 ("The term 'work experience' means skills and abilities acquired through work previously performed by the individual which indicates the type of work the individual may be expected to perform. Work for which the individual has demonstrated a capability is the best indicator of the kind of work that the individual can be expected to do. Sections 404.1565(a) [DIB] and 416.965(a)

Plaintiff's residual functional capacity ("RFC") rendered her
capable of performing unskilled work at the light exertional
level[8] (steps four and five).

> The ALJ determined Plaintiff's RFC to be as follows:
>
> After careful consideration of the entire record, the
> undersigned finds that the claimant has the residual
> functional capacity to perform light work as defined in
> 20 CFR 416.967(b) except that she could engage in work
> related activities involving frequent climbing of stairs
> and ramps, occasionally climbing of ladders, ropes or
> scaffolds. She can understand, remember and apply simple
> instructions, making simple decisions in the work place
> and do simple repetitive tasks. She can occasionally make
> adjustment to workplace routine. She could have

---

[SSI] of the regulations state as follows: 'We consider that
your work experience applies [i.e., is relevant] when it was
done within the last 15 years, lasted long enough for you to
learn to do it, and was substantial gainful activity
[SGA].'").

[8] See 20 C.F.R. § 416.968 (explaining that unskilled work "is
work which needs little or no judgment to do simple duties
that can be learned on the job in a short period of time"); 
20 C.F.R. § 416.967 ("Physical exertion requirements. To
determine the physical exertion requirements of work in the
national economy, we classify jobs as sedentary, light,
medium, heavy, and very heavy."); 20 C.F.R. § 416.967 ("Light
work. Light work involves lifting no more than 20 pounds at a
time with frequent lifting or carrying of objects weighing up
to 10 pounds. Even though the weight lifted may be very
little, a job is in this category when it requires a good deal
of walking or standing, or when it involves sitting most of
the time with some pushing and pulling of arm or leg controls.
To be considered capable of performing a full or wide range of
light work, you must have the ability to do substantially all
of these activities. If someone can do light work, we
determine that he or she can also do sedentary work, unless
there are additional limiting factors such as loss of fine
dexterity or inability to sit for long periods of time. . .
.").

> occasional contact with supervisors and co-workers and no contact with the public. She would be off task 8 percent of the work day in addition to normal breaks of 15 minutes each morning and afternoon and 30 minutes for lunch and would use one day of unscheduled absence per month.

(R. at 21.)

At the hearing, a vocational expert ("VE") testified that someone with Plaintiff's RFC would be capable of performing jobs such as a packer, production helper, and racker. (R. at 32.)

Plaintiff argues that the ALJ erred in the following ways: (1) the ALJ erred at step two by not finding her Irritable Bowel Syndrome ("IBS"), right shoulder pain, carpal tunnel syndrome, cervical degenerative disc disease, hip pain, knee pain, and bunions to be severe impairments; (2) the ALJ erred in failing to perform a function-by-function analysis in his RFC determination; (3) the ALJ erred in his evaluation of the opinion evidence; and (4) the ALJ's finding that Plaintiff would be off-task eight percent of the workday is not supported by substantial evidence in the record. The Court will address each argument in turn.

## 1.   Whether the ALJ erred at step two

Plaintiff argues that the medical records demonstrate that Plaintiff suffered from the impairments of IBS, right

shoulder pain, carpal tunnel syndrome, cervical degenerative disc disease, hip pain, knee pain, and bunions, and Plaintiff expressed subjective complaints about these impairments, but the ALJ failed to find them to be severe impairments.  To the extent that the ALJ was correct that they were not severe impairments, Plaintiff argues that the ALJ erred in not considering these impairments in combination with her severe impairments in making his RFC determination.

At step two, the ALJ has to "consider the medical severity of a claimant's impairment(s)."  20 C.F.R. § 416.920(a)(4)(ii).  "The severity test at step two is a '*de minimis* screening device to dispose of groundless claims.'"  McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360–61 (3d Cir. 2004) (citation omitted).  The severe impairment "must have lasted or must be expected to last for a continuous period of at least twelve months."  20 C.F.R. § 416.905(a). In order to have a severe impairment, the impairment or combination thereof must significantly limit a person's "physical or mental ability to do basic work activities."  20 C.F.R. § 416.920(c).  The burden at step two is on the claimant to show "something beyond a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work."

McCrea, 370 F.3d at 360.

When making the RFC determination, the ALJ is required to:

> [C]onsider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. By objective medical evidence, we mean medical signs and laboratory findings . . . . By other evidence, we mean . . . statements or reports from you, your treating or nontreating source, and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how your impairment(s) and any related symptoms affect your ability to work. . . .

20 C.F.R. § 416.945.

Additionally, the RFC assessment takes into consideration all of a claimant's medically determinable impairments in combination, including those that the ALJ has found to be severe, as well as those that are not deemed to be severe at step two. See 20 C.F.R. § 416.945(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not "severe," as explained in §§ 416.920(c), 416.921, and 416.923, when we assess your residual functional capacity.").

To support Plaintiff's contention that the ALJ erred at step two, and also in his RFC determination, Plaintiff argues that she "has sought treatment from multiple medical providers for all of her impairments for a number of years. There is

objective evidence to support the Plaintiff's subjective complaints.  There is ample evidence of treatment for the same in the form of medication management, including narcotic medication, nerve medication and mental health medication. This is significant as evidence supports some degree of limitation, and the ALJ did not discount or otherwise explain his reasons for ignoring the same." (Docket No. 7 at 23-24.)

Other than citing to records showing that she was treated for these various ailments, ranging from IBS to bunions, and that she suffered various issues from them, Plaintiff fails to specify what the ALJ overlooked in consideration of these impairments.  To the contrary, the ALJ detailed each impairment and fully explained why he did not find any of them to be severe (R. at 15-18), and Plaintiff fails to make any argument specific to each impairment as to how the ALJ erred in his analysis.

With regard to their impact on the RFC determination even when those impairments are considered not severe, Plaintiff does not articulate what additional restrictions should have been implemented.[9]  It is Plaintiff's burden to establish the

--------

[9] The only impairment Plaintiff specifically addresses in the context of a non-severe impairment's effect on her RFC is migraines.  Plaintiff argues that there "is record evidence that Plaintiff's migraines are so severe that they would have

14

severity of her impairments, and Plaintiff's challenge to the
ALJ's consideration of her non-severe impairments amounts to
mere disagreement with his analysis rather than showing any
substantive error.  See, e.g., Perkins v. Barnhart, 79 F.
App'x 512, 514–15 (3d Cir. 2003) ("Perkins's argument here
amounts to no more than a disagreement with the ALJ's
decision, which is soundly supported by substantial
evidence."); Moody v. Commissioner of Social Security
Administration, 2016 WL 7424117, at *8 (D.N.J. 2016) ("[M]ere
disagreement with the weight the ALJ placed on the opinion is
not enough for remand."); Grille v. Colvin, 2016 WL 6246775,
at *8 (D.N.J. 2016) ("Distilled to its essence, Plaintiff's
argument here amounts to nothing more than a mere disagreement
with the ALJ's ultimate decision, which is insufficient to
overturn that decision.").

   **2.   Whether the ALJ erred in failing to perform a
         function-by-function analysis in his RFC
         determination**

---

more than a 'minimal' effect on her ability to work.
Furthermore, incorporating appropriate limitations on the
Plaintiff's tolerance for noise will erode the jobs available
at all exertional levels.  Likewise, despite significant
testimony and evidence related to migraines, no limitation or
allowance for absences or being off-task in any way was
assessed." (Docket No. 7 at 22-23.)  Plaintiff, however,
fails to cite to the professed "significant testimony and
record evidence" that shows the impact of migraines on her
RFC.  Indeed, Plaintiff does not even claim disability for
migraines.

Plaintiff argues that the ALJ erred in his RFC determination by not specifically addressing all seven exertional capacity functions required to be assessed by the ALJ with regard to Plaintiff's IBS.[10] SSR 96-8p provides, "Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling.  Each function must be considered separately (e.g., 'the individual can walk for 5 out of 8 hours and stand for 6 out of 8 hours'), even if the final RFC assessment will combine activities (e.g., 'walk/stand, lift/carry, push/pull')."  The RFC is a function-by-function assessment based on all of the relevant evidence of an individual's ability to do work-related activities, but an ALJ does not need to use particular language or adhere to a particular format in conducting his RFC analysis.  Ungemach v. Commissioner of Social Security, 2019 WL 3024858, at *4 (D.N.J. 2019) (citing Jones v. Barnhart, 364 F.3d 501, 505 (3d

---

[10] At the beginning of this section of Plaintiff's brief, she also argues that the ALJ erred in not addressing the functional limitations of Plaintiff's hip pain and cervical impairments.  Plaintiff fails to make any further argument on those impairments.

Cir. 2004)).  SSR 96-8p requires that each function "must be considered," but it does not require every function to be specifically delineated in the RFC.  Indeed, SSR 96-8p contemplates that in his "final RFC assessment," an ALJ may assess the functions in combination rather than individually.

Plaintiff argues that "[a]ppropriate limitations in sitting, standing, lifting, and carrying plus appropriate additional off-task time due to Claimant's IBS would likely have resulted in a finding that there was no work in the national economy that Claimant could perform."  (Docket No. 7 at 26.)  Plaintiff does not articulate what those "appropriate limitations" are with regard to any of the seven exertional capacity functions.  Plaintiff only argues that "taking the ALJ's finding that Claimant would be off-task 8% of the time . . ., even an additional 3% time off-task for Claimant's IBS would be beyond the customary 10% time off-task that the Vocational Expert testified would preclude competitive employment at the unskilled level."  (Id.)  The eight-percent off-task finding is discussed below with regard to step five, but in the context of Plaintiff's function-by-function argument, Plaintiff's contention that her IBS would cause her to be off task three percent more of the time is a conclusion without support from the record, and is, again, simply a

17

disagreement with the ALJ's assessment of Plaintiff's non-severe impairments.  As such, Plaintiff's argument does not present a meritorious basis for remand on this issue.

### 3.   Whether the ALJ erred in his evaluation of the opinion evidence

An ALJ is required to state what weight he ascribes to a medical opinion, but not to other forms of medical evidence. 20 C.F.R. § 416.927(c) ("How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's medical opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.").

Plaintiff challenges the ALJ's assessment of opinions provided by three medical sources (Lawrence Mintzer, Ph.D., Barry Kardos, Ph.D., and Marcus Magnet, M.D.), her boyfriend, Scott Heller, and her friend, Alicia Anderson.

**Lawrence Mintzer, Ph.D.** - Dr. Mintzer is a state consultative psychologist who evaluated Plaintiff one time on March 15, 2016 regarding her alleged mental impairments.  The ALJ first considered Dr. Mintzer's examination findings at step three in his assessment of whether Plaintiff's mental impairments met the Listings.  In that section, and

18

specifically with regard to Plaintiff's ability to get along with others, the ALJ found a moderate limitation.  To support that finding, the ALJ noted that Plaintiff had alleged she was fired due to problems getting along with others, but Dr. Mintzer reported that Plaintiff told him she had stopped working due to a fall which resulted in a brain bleed.  (R. at 20.)  The ALJ concluded, "Due to the conflicting evidence, the claimant has not established by a preponderance of the evidence that her job action arose due to problems getting along with others or taking direction."  (Id.)

Later in his decision, the ALJ assessed Dr. Mintzer's opinion to support his RFC determination.  The ALJ summarized Dr. Mintzer's consultative report in detail (R. at 24, 28), and the ALJ explained the weight he provided Dr. Mintzer's opinion:

> Lawrence Mintzer, Ph.D., concluded on March 15, 2016 that the claimant's limitations were moderate to severe in degree (Exhibit B3F).  The undersigned assigns some weight to Dr. Mintzer's opinion (Exhibit B3F).  The undersigned assigns little weight to the opinion that the claimant was severely limited based upon the conclusions in Finding 3 above.  The undersigned assigns great weight to his opinion that the claimant was moderately limited based upon the conclusions in Finding 3 above demonstrating limitations of no more than a moderate level.  Further, Dr. Mintzer was not an examining doctor[11]

---

[11] It appears that Dr. Mintzer examined Plaintiff in person, rather than only reviewed her medical records and other record evidence as some consultative examiners do.  The Court

19

and his opinion is somewhat vague.

(R. at 29-30.)

Plaintiff argues that the ALJ erred in his assessment of Dr. Mintzer's opinion because the step three analysis should not be imported to the RFC analysis since the "findings at Step Three are the ALJ's own."  Plaintiff does not cite to any law that precludes the ALJ's reference to evidence discussed at step three later in an ALJ's decision.  Instead of referring to the discussion of Dr. Mintzer's records at step three, which was perhaps in an effort to avoid being repetitive and exacerbating the length of the already lengthy 24-page, single-spaced decision, the ALJ could have simply copied the same recitation of the evidence to the section assessing Plaintiff's RFC.  While the analysis of that evidence may change depending on the step in the sequential step analysis it is being considered, the evidence itself does not change.  Moreover, Plaintiff's statement that the ALJ's step three findings are "his own" is of no moment, as the RFC determination is also the sole province of the ALJ, and an ALJ's decision as a whole is ultimately "his own."

_____

construes this statement to differentiate Dr. Mintzer from Plaintiff's other medical providers who treated Plaintiff on more than one occasion and did not only examine her as part of the disability claim process.

20

Plaintiff also takes issue with the ALJ's finding that
Dr. Mintzer's opinion was "vague" because the ALJ does not
explain what was vague about his opinion, and Plaintiff
questions what more Dr. Mintzer could have provided.  An ALJ
is permitted to accept or reject all or part of any medical
source's opinion, as long as the ALJ explains his reasons and
supports his assessment with substantial evidence.  Plummer v.
Apfel, 186 F.3d 422, 439 (3d Cir. 1999).  Plaintiff may
disagree with how the ALJ viewed Dr. Mintzer's opinion, but
the ALJ properly explained with support from the record the
weight he afforded Dr. Mintzer's opinion based on the reasons
articulated above, including his view that it was "vague," or
in other words, imprecise or unclear.

**Barry Kardos, Ph.D.** - Dr. Kardos is a state consultative
psychologist who evaluated Plaintiff one time on August 5,
2016 regarding her alleged mental impairments.  In his
decision, the ALJ provided a detailed summary of Dr. Kardos's
findings.  (R. at 24.)  The ALJ noted that as with Dr.
Mintzer, Plaintiff did not have the benefit of Adderall prior
to being tested by Dr. Kardos.  The ALJ found that Dr.
Kardos's opinion "demonstrates greater functional deficits
than the claimant exhibited during Dr. Mintzer's evaluation
suggesting that without professionally managed mental

21

health treatment, the claimant was undertreated.  Her IQ score

evaluations were performed without the benefit of Adderall,

which was not prescribed until 2018." (R. at 28.)  As to Dr.

Kardos's opinion, the ALJ recounted:

> Dr. Kardos concluded on August 18, 2016 that the claimant
> was not capable of working a full time employment
> position, eight hours a day, five days a week for at
> least the next 12 months (Exhibit B6F). He concluded that
> she had no limitation in being aware of hazards and
> taking appropriate precautions. She was limited but
> satisfactory in asking simple questions or requesting
> assistance. She was limited between being seriously
> limited to having no useful ability to perform the
> remainder of the activities involved in the mental
> abilities and aptitudes needed to do unskilled work.
>
> The undersigned assigns Dr. Kardos' opinion some weight
> (Exhibit B6F). The undersigned assigns great weight to
> his opinion that the claimant has no limitation in being
> aware of hazards and taking appropriate precautions and
> limited but satisfactory in asking simple questions and
> requesting assistance. His opinion is consistent with the
> conclusions in Finding 4 above for the reasons noted
> there. The undersigned assigns little weight to the
> remainder of his opinions because they are not consistent
> with the conclusion in Finding 3 above. Further, his
> opinion was an examination produced expressly for this
> case based upon the claimant's self-reports in many
> areas.

(R. at 30.)

Plaintiff argues that the ALJ erred in his assessment of

Dr. Kardos's opinion because the ALJ cherrypicked it,

assigning "great weight" to those portions he liked and

assigning "little weight" to those he did not, and he

substituted his judgment for that of a medical professional

without further explanation.  It is Plaintiff's burden to show she is incapable of working, and that the ALJ's decision that she is capable of working is not supported by substantial evidence.  To meet that burden, Plaintiff must present arguments supported by record.  Plaintiff fails to point to evidence that contradicts the evidence that supports the portions of Dr. Kardos's opinion the ALJ afforded great weight and little weight, and the evidence for which the ALJ substituted his own judgment.  Plaintiff's argument is conclusory and presents mere disagreement with how the ALJ evaluated Dr. Kardos's opinion.

Plaintiff also argues that the ALJ dismissed significant portions of Dr. Kardos's opinion because the doctor relied on her self-reports, and that is in error because most mental health impairments may only be assessed based on a person's statements.  Even accepting that this observation may be generally true, Plaintiff again has failed to show specific examples of how Plaintiff's self-reports corroborate her alleged limitations.  Moreover, in the ALJ's decision as a whole, the ALJ detailed Plaintiff's testimony regarding her mental impairments and the impact they have on her daily living activities, and the ALJ recounted the content of what Plaintiff reported to the medical sources.  The ALJ contrasted

those "self-reports" with other record evidence to determine

the weight he afforded each medical opinion and ultimately

Plaintiff's RFC.  This is precisely what is required of an

ALJ, and the ALJ here did not err in his consideration of Dr.

Kardos's opinion.[12]

---

[12] See Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981) ("We
are also cognizant that when the medical testimony or
conclusions are conflicting, the ALJ is not only entitled but
required to choose between them.... [W]e need from the ALJ not
only an expression of the evidence s/he considered which
supports the result, but also some indication of the evidence
which was rejected."); 20 C.F.R. § 416.929 ("Because symptoms
sometimes suggest a greater severity of impairment than can be
shown by objective medical evidence alone, we will carefully
consider any other information you may submit about your
symptoms. The information that your medical sources or
nonmedical sources provide about your pain or other symptoms
(e.g., what may precipitate or aggravate your symptoms, what
medications, treatments or other methods you use to alleviate
them, and how the symptoms may affect your pattern of daily
living) is also an important indicator of the intensity and
persistence of your symptoms. Because symptoms, such as pain,
are subjective and difficult to quantify, any symptom-related
functional limitations and restrictions that your medical
sources or nonmedical sources report, which can reasonably be
accepted as consistent with the objective medical evidence and
other evidence, will be taken into account as explained in
paragraph (c)(4) of this section in reaching a conclusion as
to whether you are disabled. We will consider all of the
evidence presented, including information about your prior
work record, your statements about your symptoms, evidence
submitted by your medical sources, and observations by our
employees and other persons."); SSR 16-3-p ("An individual's
statements may address the frequency and duration of the
symptoms, the location of the symptoms, and the impact of the
symptoms on the ability to perform daily living activities. An
individual's statements may also include activities that
precipitate or aggravate the symptoms, medications and
treatments used, and other methods used to alleviate the

**Marcus Magnet, M.D.** - Dr. Magnet is an internist who began treating Plaintiff on August 4, 2015.  In his decision, the ALJ detailed many of Plaintiff's visits with Dr. Magnet with regard to each of her claimed impairments.  (R. at 13, 15, 16, 17, 22, 23-26, 27.)  In his assessment of Dr. Magnet's opinion, the ALJ provided a comprehensive explanation:

> Dr. Magnet concluded on September 6, 2018 that the claimant's medication caused significant side effects that could be expected to limit the effectiveness of her work duties (Exhibit B7F). She had knee and back pain on a daily basis. She would be off task more than 25 percent of the time.
>
> Dr. Magnet concluded on September 6, 2018 that the claimant was markedly limited in her ability to remember work like procedures, complete a normal work day and work week without interruptions from psychologically based symptoms, and deal with normal work stress (Exhibit B7F). She was mildly to moderately limited in all other areas of abilities and aptitudes needed to do unskilled work. She had moderate to marked limitations in her ability to perform semi- skilled to skilled work. She had moderate or less limitations in her ability to interact appropriately with the general public, maintain socially appropriate behavior, adhere to standards of neatness and cleanliness, travel in unfamiliar places and use public transportation.
>
> The undersigned assigns little weight to Dr. Magnet's opinions (Exhibit B7F). The undersigned finds Dr. Magnet's conclusions to be inconsistent with the record and determines that Dr. Magnet's lack of expertise in vocational training and occupational health coupled with his specialty in internal medicine has not provided a

---

symptoms. We will consider an individual's statements about the intensity, persistence, and limiting effects of symptoms, and we will evaluate whether the statements are consistent with objective medical evidence and the other evidence.").

balanced review of the claimant's limitations.

Dr. Magnet's assessment that the claimant does not have a capacity for work is given little weight because the totality of the medical evidence shows that the claimant is not as limited as determined by Dr. Magnet. The record suggests that Dr. Magnet, who does not have a specialization in orthopedics, psychiatry or psychology, relied heavily on the claimant's subjective complaints regarding her physical impairments to guide the completion of his opinion. Further, regardless of Dr. Magnet's conclusions about the claimant's disabled status, opinions regarding a claimant's ability to work are administrative findings and as such are reserved to the Commissioner (20 CFR 416.927).

(R. at 30-31.)

Plaintiff argues that the ALJ erred in his evaluation of Dr. Magnet's opinion by making a blanket statement that a treating source's opinion is "inconsistent with the record" without more explanation.  This argument is unpersuasive because the ALJ provided a detailed analysis of the entire record to contrast Dr. Magent's opinion with the other evidence.

Plaintiff further argues that requiring or even suggesting that a treating physician have "vocational training" or training in "occupational health" in order to be accorded increased weight is in error.  Contrary to Plaintiff's argument, the ALJ did not hold that vocational or occupational training was required for him to afford Dr. Magnet's opinion increased weight, but rather the ALJ made the

point to discount some of Dr. Magnet's opinions because he did
not have specific training in areas about which he was
opining.  That is a legitimate factor for the ALJ to consider.
See 20 C.F.R. § 416.927(c)(2)(ii) ("Generally, the more
knowledge a treating source has about your impairment(s) the
more weight we will give to the source's medical opinion.  We
will look at the treatment the source has provided and at the
kinds and extent of examinations and testing the source has
performed or ordered from specialists and independent
laboratories.  For example, if your ophthalmologist notices
that you have complained of neck pain during your eye
examinations, we will consider his or her medical opinion with
respect to your neck pain, but we will give it less weight
than that of another physician who has treated you for the
neck pain.  When the treating source has reasonable knowledge
of your impairment(s), we will give the source's medical
opinion more weight than we would give it if it were from a
nontreating source."); 20 C.F.R. § 416.927(c)(5) ("We
generally give more weight to the medical opinion of a
specialist about medical issues related to his or her area of
specialty than to the medical opinion of a source who is not a
specialist.").

      Finally, Plaintiff argues that the ALJ provided no

27

reasonable basis for discounting Plaintiff's treating
provider's opinion evidence on its merits, because as a
treating physician, Dr. Magnet's reports should be afforded
great weight.  This argument appears to be a conclusory
summary statement of the other challenges to the ALJ's
assessment of Dr. Magnet, and provides no further substantive
argument.

As this Court has noted, an ALJ may reduce his reliance
upon a treating physician's opinions if those opinions are
inconsistent with other medical evidence, and if he explains
his reasoning.  Plummer, 186 F.3d at 439.  Here, the ALJ
fulfilled this obligation in his assessment of Dr. Magent's
opinion, and consequently, the ALJ did not err in his
evaluation of Dr. Magnet's treatment records or the weight he
afforded Dr. Magnet's opinions.

**The third-party witness opinions of Plaintiff's boyfriend
and friend -** Plaintiff's long-term boyfriend, Scott Heller,
and her friend, Alicia Anderson, provided third-party function
reports regarding their perceptions of the effects of
Plaintiff's claimed impairments on her daily living
activities.  The ALJ explained the weight he afforded each
opinion:

Mr. Heller indicated in an undated statement that the

claimant's anxiety had worsened over the years (Exhibit B1 5E). She could not hold a job because she did not leave her home and she was taking a lot of medication.

The undersigned assigns some weight to Mr. Heller's opinions (Exhibits B3E and B15E). The undersigned finds no evidence that he has any background in psychology or psychiatry. He was not in a treatment relationship with the claimant. However, he did know the claimant for a period of time. The undersigned assigns weight to his opinions to the extent noted in Finding 3 above for the reasons noted there. Finding his opinion is conclusory and does not reflect much detail.

Ms. Anderson indicated in an undated statement that the claimant needed assistance from her fiance, family and Ms. Anderson to manage her daily activities (Exhibit B12E). She was able to take care of her children but not herself. The claimant was not to drive or exert herself due to her medications. She would drive locally for her children's appointments and she did not like to leave home. Ms. [Anderson] changed all of her doctor's to match the claimant's so she could provide explanations to the doctors and to the claimant. She reminded the claimant about taking her medications.

The undersigned assigns some weight to Ms. Anderson's opinion (Exhibits B12E). The undersigned finds no evidence that she has any background in psychology or psychiatry. She was not in a treatment relationship with the claimant. However, she did know the claimant for a period of time. The undersigned assigns weight to her opinion to the extent noted in Finding 3 above for the reasons noted there. Further, her opinion is vague.

(R. at 31.)

Plaintiff argues that the ALJ inappropriately discounted this evidence stating that these individuals were not in treating relationships Plaintiff and they did not they have any specialized medical background. Contrary to Plaintiff's

argument, the regulations explicitly permit the ALJ to
consider these factors.  <u>See</u> SSR 06-03p (effective for claims
filed before March 27, 2017, 82 F.R. 5844) (providing six
factors when considering "other nonmedical sources": How long
the source has known and how frequently the source has seen
the individual; How consistent the opinion is with other
evidence; The degree to which the source presents relevant
evidence to support an opinion; How well the source explains
the opinion; Whether the source has a specialty or area of
expertise related to the individual's impairment(s); Any other
factors that tend to support or refute the opinion).

       Plaintiff also argues that the ALJ failed to point to any
objective evidence on the record that contradicts the opinions
of the third-party witness statements.  Plaintiff does not
point to evidence in the record that supports the third-party
witness statements, and, moreover, this conclusory statement
is belied by the record.  The ALJ fully explained how
Plaintiff's boyfriend and friend's statements conflicted with
the other evidence in the record.  <u>See, e.g.</u>, <u>Zirnsak v.
Colvin</u>, 777 F.3d 607, 613 (3d Cir. 2014) ("In evaluating the
lay testimony of Zirnsak's family, friends, and husband, the
ALJ explicitly followed the guidance set forth in SSR 06-03p.
He evaluated the relevant factors, assessed the credibility of

certain evidence, and explained why he found certain evidence to be not credible.").

Based on the foregoing, the Court finds that the ALJ did not err in his consideration of the opinion evidence.

### 4.    Whether the ALJ erred in finding that Plaintiff would be off-task eight percent of the workday

In the RFC determination, the ALJ determined that Plaintiff "would be off task 8 percent of the work day in addition to normal breaks of 15 minutes each morning and afternoon and 30 minutes for lunch and would use one day of unscheduled absence per month." (R. at 21.) Plaintiff argues that the ALJ failed to explain his finding that Plaintiff would be off-task eight percent of the day, and the ALJ failed to present this limitation to the VE at the hearing.

Plaintiff's argument is unavailing. At the hearing, when asked twice about the tolerance of an employer whose employee would be off-task, the VE testified, "Typically in unskilled occupations a pattern of being off-task 10 percent or greater ongoing would preclude competitive employability." (R. at 78, 79.) Although the ALJ did not specifically ask the VE about being off-task eight percent, it is evident from the VE's testimony that less than ten percent off-task would be within an employer's tolerance. Additionally, the ALJ's

31

determination that Plaintiff would be off-task for eight

percent of the day is supported by the overall record, about

which the ALJ explicitly explains:  "The undersigned assigned

limitations in the claimant's residual functional capacity as

assigned to consider the conclusions in Finding 3 above for

the reasons noted there.  The undersigned assigned

off task and one unscheduled absence per month to consider her

mental impairments."  (R. at 29.)

Plaintiff argues that "the VE was never asked whether

this tolerance would be decreased if all of the other

limitations identified previously were considered," and remand

is necessary because the ALJ did not pose a complete

hypothetical to the VE.  The Court does not agree.  Plaintiff

fails to identify "all of the other limitations identified

previously" that the ALJ did not include in the hypothetical

to the VE, and moreover, an ALJ is only required to pose

hypotheticals to a VE that contain the claimant's medically

established impairments, rather than all of the impairments a

claimant claims.  See Pidgeon v. Colvin, 2016 WL 2647666, at

*13 (D.N.J. 2016) (citing Burns v. Barnhart, 312 F.3d 113, 123

(3d Cir. 2002) (quoting Chrupcala v. Heckler, 829 F.2d 1269,

1276 (3d Cir. 1987); Rutherford v. Barnhart, 399 F.3d 546, 554

(3d Cir. 2005)) ("[A] hypothetical posed to a vocational

expert must reflect all of a claimant's impairments.  But this
do[es] not require an ALJ to submit to the vocational expert
every impairment alleged by a claimant.  Rather, in posing a
hypothetical to the VE, references to all impairments
encompass only those that are medically established.  And that
in turn means that the ALJ must accurately convey to the
vocational expert all of a claimant's credibly established
limitations.  As the Third Circuit noted in Rutherford,
objections to the adequacy of hypothetical questions posed to
a vocational expert often boil down to attacks on the RFC
assessment itself.  Accordingly, if the ALJ did not
incorporate the limitation into the RFC, then the ALJ did not
need to incorporate the limitation into the hypothetical posed
to the VE." (internal quotations omitted)).

The Court finds that the ALJ did not err in determining
Plaintiff would be off-task eight percent of the day, or in
the hypotheticals presented to the VE.

**III. CONCLUSION**

This Court may not second guess the ALJ's conclusions,
but may only determine whether substantial evidence supports
the ALJ's determinations.  Hartzell v. Astrue, 741 F. Supp. 2d
645, 647 (D.N.J. 2010) (citing Williams v. Sullivan, 970 F.2d
1178, 1182 (3d Cir. 1992)).  The Court finds that the ALJ's

33

determination that Plaintiff was not totally disabled as of June 16, 2015 is supported by substantial evidence.  The decision of the ALJ will therefore be affirmed.

An accompanying Order will be issued.


Date: December 22, 2020               s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.

34